UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 2:07-CR-40 |
| V. | ) | |
| | ) | |
| HERBERT S. MONCIER | ) | |

# MEMORANDUM OPINION AND ORDER

This criminal contempt matter is before the Court on the "Motion To Disqualify" filed by the defendant, Herbert S. Moncier. (Doc. 754). By his motion, Mr. Moncier seeks disqualification of the undersigned United States District Judge from presiding at his criminal contempt trial. For the reasons which follow, the motion will be DENIED.

Due process requires recusal of a judge who has become personally embroiled in a controversy and cannot therefore adjudicate it fairly. *Mayberry v. Pennsylvania*, 400 U.S. 455, 465-66, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). Likewise, a trial judge should not preside over a criminal contempt proceeding against an attorney where the trial judge has permitted himself to become "personally embroiled" with the defense attorney throughout trial. *Id.; Offutt v. United States*, 348 U.S. 11, 17, 75 S.Ct. 11, 15, 99 L.Ed. 11 (1954). District judges should not sit "in judgement upon misconduct of counsel where the contempt

charged is entangled with the judge's personal feelings against the lawyer." *Id.* "The vital point is that in sitting in judgment on such a misbehaving lawyer the judge should not himself give vent to personal spleen or respond to a personal grievance." *Id.* Additionally, Federal Rule of Criminal Procedure 42(a)(3) provides that if the criminal contempt at issue involves disrespect toward or criticism of a judge, that judge may not preside at the criminal contempt trial unless the defendant consents.

Mr. Moncier advances several bases for disqualification in this case. First of all, he invokes Rule 42(a)(3), arguing that the conduct charged as contempt "involves disrespect" toward this Court. In support of his argument, Mr. Moncier points to an exchange between the Court and Mr. Moncier's counsel at the status conference held in this case on March 23, 2007. The following occurred at that hearing:

> **MR. ROGERS**: . . . but what I really was trying to ask you is, is it not the very core of, what occurred here in the court's mind, does that not involve disrespect to the orders and the inquiry that this court was making from your perspective? And the, and, you know, the only way I know how to get that answer is to ask you; that do you consider that that involved disrespect to your honor and as a, as a judge for interfering from your perspective with the proceedings?
>
> **THE COURT**: That's really two different questions, Mr. Rogers.
>
> **MR. ROGERS**: Ok. Well, I'm sorry. Well, I'm sorry.
>
> **THE COURT**: Was it disrespectful? Yes, it was. Is Mr. Moncier's disrespect to the court the basis of the show cause order? The answer to that is no. Mr. Moncier is chronically disrespectful to this court. The basis of the show cause was that Mr. Moncier's refusal to comply with my oral directive to him

> disrupted this court's conduct of the proceedings that were being undertaken at the time. And in fact brought them to a halt.

TR. (3/23/2007), pp. 11-12.

As the Court order of March 23, 2007, (Doc. 748), makes clear, Mr. Moncier's alleged contemptuous conduct involved the direct disobedience by him of an explicit oral order of the Court. Except to the extent that any refusal to comply with a court order generally involves disrespect to the Court as an institution, Mr. Moncier's conduct in the case involved no personal attack upon the undersigned and was in no sense personal to the undersigned, with one possible exception which will be discussed below. Resistance to the authority of the Court by refusal to comply with its orders is hardly the kind of offense which involves disrespect toward or criticism of a judge such as to invoke the requirements of Rule 42(a)(3). In addition, the Court's comments of March 23, 2007, supported by the record as a whole, suggest Mr. Moncier's disrespect for the Court as an institution rather than an improper attack of a personal nature toward the undersigned, who simply happens to have the responsibility of presiding over this Court.[1]

There is, however, one troubling aspect to Mr. Moncier's argument that his conduct has been personal toward the presiding judge such as to create an appearance of bias or partiality on the part of this Court. Throughout these proceedings, Mr. Moncier has, on

---

[1] In fact, if the disobedience of a direct order of the court is the type of offense involving disrespect to the judge which is contemplated by Rule 43(a)(3), one can hardly imagine any contemptuous conduct which would not fall within the purview of the rule.

3

more than one occasion, accused this Court of bias or prejudice toward him or his client. (See Doc. 733 for the most recent such accusation). While these accusations by Mr. Moncier certainly are of a personal nature, and comments to which the undersigned could take personal offense, recusal on this basis alone is very troubling and might, in fact, set a very dangerous precedent. If Mr. Moncier, or any other attorney, is permitted to gain disqualification of a trial judge simply by leveling an accusation of bias, whether supported by the record or not, then the attorney becomes able to control the conduct of the proceedings by in effect striking any judge whom he does not wish to have preside over his case. A standard which allows parties to too easily obtain the disqualification of a judge and to potentially manipulate the system for strategic reasons, perhaps to obtain a judge more to their liking, would undermine public confidence in the proceedings, not only to the detriment of the Court as an institution, but also potentially to adverse litigants as well. In these proceedings, Mr. Moncier has made no effort to support his allegations of bias with anything other than his dislike for and disagreement with certain of the Court's rulings. Such disagreement with the Court's rulings will not support the disqualification of a trial judge.

Next, Mr. Moncier suggests that disqualification is required by 28 U.S.C. § 455(a) because of actual bias or an appearance of bias on the part of this judge and states that "[a] judge should be disqualified from any proceeding where the circumstances raise reasonable questions about his impartiality . . . ." While Mr. Moncier's statement of the law is correct, the factual premise underlying his position is seriously flawed. In support of his position that disqualification is required by § 455(a), Mr. Moncier cites what he refers to as

"a difficult and strained relationship" with the Court in this case. He cites no facts or excerpts from the record in support of his contention except for the Court's remark, set forth above, about his chronic disrespect for the Court, which has not been personal to the judge of this Court.

The record in this case does in fact establish that Mr. Moncier's professional relationship with this Court has become a difficult one. Mr. Moncier has, throughout these proceedings, vigorously and strenuously disagreed with the Court's rulings on certain matters, to the point of accusing the Court of bias or prejudice, as discussed above, and has repeatedly argued with the Court's decisions far beyond that necessary to preserve his position for appeal. Mr. Moncier has also repeatedly exhibited uncivil and unprofessional behavior toward the Assistant United States Attorneys and law enforcement officers assigned to this case. He has repeatedly ignored the Court's instructions to confine his argument and remarks to the specific issue then under consideration by the Court. This Court has in fact become, at times, exasperated with the conduct of Mr. Moncier and has on occasion lost patience with him. The record in the case, however, does not establish that the Court has become "personally embroiled" with Mr. Moncier and Mr. Moncier has pointed to nothing in the record which suggests any personal animosity by this judge or by any judge of this Court toward Mr. Moncier. On the contrary, the Court's admonishments to Mr. Moncier have been restrained and even personally complimentary to Mr. Moncier. As the United States Supreme Court has observed (in the context of 28 U.S.C. § 455 (a)):

> . . . judicial remarks during the course of a trial that are critical

5

> or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge . . . . By establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what perfect men and women, even after having been confirmed as federal judges, sometimes display.

*Liteky v. United States*, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). *See also United States v. Galin*, 222 F.3d 1123 (9th Cir. 2000).

Mr. Moncier confuses the Court's efforts to keep the proceedings on track and to maintain decorum with personal bias. "A judge who objectively expresses his antipathy toward contumacious conduct does not thereby disqualify himself from adjudicating the contempt under Rule 42(a) [or under § 455(a)]." *Commonwealth of Pennsylvania v. Local Union* 542, 552 F.2d 498, 514 (3d Cir. 1977).

Mr. Moncier also points to certain "statements made by the Court since November 17, 2006, the date of the alleged contempt as "evidence" that the Court has formed certain opinions about him. These "statements" [See Doc. 765] concern such things as Mr. Moncier's ethical obligation to call to the Court's attention precedent contrary to his stated position, his possible violation of disciplinary rules related to his contact with and the calling of a represented witness at the trial of the case, and some of the Court's conclusions about Mr. Moncier's possible representation of Mr. Vassar on appeal by appointment of the Court. None of these statements reflect any personal bias toward Mr. Moncier.

Finally, Mr. Moncier argues that § 455(b) requires recusal because the

undersigned is likely to be a material witness in this proceeding. While it is true that the events of November 17, 2006, occurred in the presence of the Court, these events were completely "on the record" and Mr. Moncier makes no effort to show that a transcript of the proceedings is inadequate to establish the facts concerning his conduct or that the transcript is somehow inaccurate. As for Mr. Moncier's argument that he will be denied the right to cross examine the Court at trial regarding the lawfulness of the Court's directive and the extent to which Mr. Moncier's failure to comply with the Court's directive obstructed justice, the Court would simply observe that the transcript of the proceeding on November 17, 2006, is wholly adequate to either prove or disprove such allegations. The Court would further observe, however, that the lawfulness of the Court's order is not likely to be at issue in this proceeding, [2] nor is it necessarily required that Mr. Moncier be proven to have obstructed

---

[2] The United States Supreme Court has acknowledged that <u>all</u> orders of the court must be complied with promptly. As the court stated in *Maness v. Meyers*, 419 U.S. 449, 459 (1975):

> If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect. *459 *Howat v. Kansas*, 258 U.S. 181, 189-190, 42 S.Ct. 277, 280-281, 66 L.Ed. 550 (1922); *Worden v. Searls*, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853 (1887). The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the 'subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.' *United States v. United Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947). This principle is especially applicable to orders issued during trial. E.g. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed. 2d 353 (1970). Such orders must be complied with promptly and completely, for the alternative would be to frustrate and disrupt the progress of the trial litigation.

Thus, the only question about the lawfulness of the Court's order to Mr. Moncier is whether this Court

justice.³

> For all of these reasons, the motion to disqualify is **DENIED**.
>
> **SO ORDERED**.
>
> **ENTER**:
>
> s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE

---

had jurisdiction over the subject matter and the person of Mr. Moncier.

³ Whether a finding that Mr. Moncier obstructed justice is an element of the offense under 18 U.S.C. § 401 may depend upon whether the facts establish a violation of the statute, if any, under 401(1) or (3).