UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.: 2:07-CR-40 |
| | ) | |
| HERBERT S. MONCIER | ) | |

SENTENCING MEMORANDUM

Comes now the United States of America, by and through James R. Dedrick, United States Attorney for the Eastern District of Tennessee, and files this sentencing memorandum in compliance with the Court's Order.

Title 18, United States Code, §§ 3553(a)(1) and (2)(A):
Nature and Seriousness of the Offense

The offense itself is clearly set out in the Court's Order. As to the nature of the offense, defendant files an affidavit by his former client, Michael Vassar. Defendant still attempts to argue guilt, an issue which has already been decided. In response to defendant's Exhibit A admitted to mitigate defendant Moncier's conduct, the United States would submit the December 16 and 19, 2006 transcripts as its Exhibit A. This exhibit was previously admitted in case number 2-05-CR-75 and includes recordings of telephone calls involving Michael Vassar, Vickie Vassar, and Reed Vassar, Jr. These calls show that Michael Vassar clearly knew what was going on and they contradict Vassar's affidavit and defendant's position. On page ten of the transcribed telephone conversations, it is clear as Michael Vassar explains to Reed Vassar what has happened and that he recognizes the conflict that Moncier has in this case when he states,

> MV:   . . . I'm going to tell you what Herb did, RJ, and this is the truth. What Herb did, he was afraid they was going to kick him off Harold Grooms' case, he's looking at big dollars with Harold Grooms.
>
> RV:   Yeah.

MV: He's wanting to represent Harold Grooms no matter what. He's done with me. You know?

RV: Yeah.

Other issues are raised in the telephone conversations which are troubling, including the December 19, 2006 conversation in which Vickie Vassar advises Michael Vassar that Reed Vassar is in contact with defendant Moncier. This was after the November 17, 2006 hearing in which the Court makes it clear that defendant Moncier is disqualified from further representation of Vassar (USDC Case No. 2:05-CR-75, Doc. No. 683, 11/17/06 Transcript at 114-115). Vassar's contact with Moncier continued through Reed Vassar.

Moncier cites certain comments from Tennessee rules regarding duties of trial attorneys and from the American Bar Association's Standards for Criminal Justice as justifying his actions in this case. Moncier picks and chooses the comments without reading the standards and rules applicable to counsel as a whole, such as comments to ABA Standard for Criminal Justice 4-1.2.

> The Limits of Professional Conduct
> The "alter ego" concept of a defense lawyer, which regards the lawyer strictly as a "mouthpiece" for the client, is fundamentally wrong and destructive of the lawyer's image; more important to the accused, perhaps, this idea is destructive of the lawyer's usefulness. [FN4] The lawyer's value to each client stems in large part from the lawyer's independent stance as a professional representative rather than as an ordinary agent. What the lawyer can accomplish for any one client depends heavily upon his or her reputation for professional integrity. The court and opposing counsel will treat the lawyer with the respect that facilitates furthering the client's interests only if the lawyer maintains proper professional detachment and conduct in accord with accepted professional standards. Such professional integrity and detachment is furthered by counsel's actions, independent of client representation, to engage in necessary and appropriate law reform activities or to seek to remedy injustices that counsel sees in the administration of criminal justice generally in his or her jurisdiction.
>
> It is fundamental that defense counsel must be scrupulously candid and truthful in representations of any matter before a court. [FN5] This is not only a basic ethical requirement but it is essential if the lawyer is to be effective in the role

2

of advocate, for if the lawyer's reputation for veracity is suspect, he or she will lack the confidence of the court when it is needed most to serve the client.

A lawyer is not required to make a disinterested exposition of the law, but he or she must recognize the existence of pertinent legal authorities. Furthermore, an advocate has a duty to disclose directly to the court adverse legal authority in the controlling jurisdiction that has not been disclosed by the opposing party. [FN6]

(Footnotes omitted). ABA Standards for Criminal Justice 4-3.5 outlines conflicts of interest. In this case, defendant Moncier attempted to represent three different clients who had obvious potential conflicts. The result of these conflicts is shown clearly in the transcript of Vassar's telephone conversations as well as in the hearing itself. As the Court noted:

> . . . the representation of three codefendants all related, whether there is an actual conflict of interest or not, has a potential to absolutely blow up in your face. I don't know why any lawyer wants to do it. Not only do you run the risk of these kinds of things happening, it seems to me you are jeopardizing your law license.

(Case No. 2:05-CR-75, Doc. No. 683, 11/17/06 Transcript at 26). Pages 40 and 41 demonstrate the actual conflict that arose in this case and page 43 demonstrates the total situation that Moncier's actions put his clients and the Court in as Moncier himself stated, "He [Vassar] isn't going to tell me if Harold Grooms said that because he knows I represent Harold Grooms." (*Id*. at 43). It is further demonstrated by defendant's evaluation of competing conflicts or interests of his various clients. (*Id*. at 104).

The comments to ABA Standards for Criminal Justice 4-3.5 address issues where an attorney allows his personal interests to interfere with those of a client.

> Personal or Other Interests
> The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his or her client and free of any compromising influences and loyalties. The lawyer's own interests should never be permitted to have an adverse effect on representation of a client. A lawyer's need for income, for example, should not lead the lawyer to prolong matters that could be resolved swiftly and competently at a more reasonable fee. If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or

3

> impossible for the lawyer to give a client detached advice. A lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed interest.
>
> Furthermore, defense counsel should not allow his or her political or personal beliefs to interfere with the zealous representation of a client's interests. While defense counsel is free, for example, to decide whether to take on a client's defense in the first instance [FN1] and is free, where the client consents after consultation, to limit the objectives of the representation, [FN2] ordinarily counsel should not, in the absence of prior agreement with the client, refuse to take steps otherwise in the client's interest, such as refusing to communicate plea offers from the government to the accused or refusing to continue representation if the client cooperates with the government. [FN3]
>
> The natural desire for personal achievement, or for personal success, or simply to be in the forefront in developing new legal concepts or theories also never justifies a lawyer compromising his or her professional judgment about a client's best interests. A lawyer's risking his or her client's conviction and a severe sentence in order to make "new law" or headlines, for example, is never justifiable where a lesser plea can be negotiated and probation secured, particularly if the prospects of a guilty verdict are strong. The correct role of defense counsel is to strive not for "courtroom victories" or media or public attention but for results that best serve the client's long-range interests. The total "war" is not won by transitory victories in interlocutory battles. An appellate "victory" on a technical point may be a Pyrrhic victory if it is followed by a new trial in which the prosecution repairs technical infirmities and makes a stronger case against the defendant.

(Footnotes omitted).

Defendant Moncier, rather than recognizing his own deficiencies in conduct, attempts to justify his actions by perverting the facts that occurred in this case. He cites strained relationships and attempts to continually shift blame to others, rather than considering that maybe his own conduct is the problem.

The Court has the obligation to administer the justice system in a way that provides a fair hearing to everyone, including the people of the United States and the victims of criminal activity. This is an important case because the conduct of all participants and the orderly administration of justice are key to all of our legal concepts. However, rather than following the rules of courtroom decorum and professional conduct, defendant Moncier attempts to justify his refusal to follow the

4

rules of this Court, even though the vast majority of defense attorneys who do zealously represent their clients are able to do so professionally and respectfully. What the defendant's sentencing memorandum does show is that he has no remorse for his actions and that he refuses to accept responsibility for his behavior.

Title 18, United States Code, § 3553(a)(2)(C):
To Protect the Public from Further Crimes by the Defendant.

The defendant in this case has never expressed any remorse nor any regret for his conduct. He attempted to represent three related defendants and when the situation deteriorated, he attempted to blame everyone involved within the system with the exception of looking where the real problem exists. The defendant seems to state that everyone is out to get him because he is such a good attorney. This could not be further from reality and his egocentric outlook will be discussed later. Defendant talks about serving the public, however, what he may actually be serving is his need to be involved in high-profile conflict. Clearly, the need to protect the public from further crimes by this defendant should be considered in evaluating a fair and just sentence. Society, citizens and his potential clients deserve no less.

Title 18, United States Code, § 3553(a)(1)(D):
To Provide the Defendant with Needed Educational or Vocational Training.

The United States would submit that educational and vocational training are factors that the Court should strongly consider in evaluating the appropriate punishment in this case. While defendant's statement that a sentence of incarceration would not serve this specific goal is true, certainly educational, vocational, and other correctional treatment in this case might be appropriate. The defendant's loss of control is demonstrated by the transcript itself. On page 43 of the November 17 transcript (Case No. 2:05-CR-75, Doc. No. 683), Moncier says "He [Vassar] isn't going to tell

me if Harold Grooms said that because he knows I represent Grooms." Just after this exchange, the Court asked defendant Moncier, "Do you know what you just said to me?" On page 44, defendant answers "no." This and other behaviors seem to indicate that anger management and other counseling might be helpful in this case. In considering the types of sentences available under 18 United States Code, § 3553(a)(3), the United States would suggest that possibly remedial training on professional standards and ethics would be helpful to defendant Moncier. While he may have practiced for many years, sometimes, it is necessary to review the basic standards and tenants of our profession, rather than deciding personally what you believe those tenants and standards should be. As with many defendants, rather than looking at his own actions, defendant Moncier attempts to compare his actions to those of unrelated cases in his sentencing memo. The United States agrees that, as stated in defense counsel's sentencing memorandum (File Doc. 64), that "imprisonment is not an appropriate means of promoting correction and rehabilitation." (File Doc. 64, Sentencing Memorandum at 20). However, the United States does not know what would encourage defendant Moncier to accept responsibility for his conduct and promote correction and rehabilitation in this case. As is often noted in Court, before a drug addict can be rehabilitated, he or she must first recognize there is a problem. This concept seems to apply in this case as well.

While defendant Moncier has continually asserted that the U.S. Attorney's Office is out to get him, officers of the Court are more concerned for what he is doing to himself, rather than expressing a desire for retribution or revenge. While dealing with defendant Moncier is frustrating, his actions and practice do not have the importance to the operation of the U.S. Attorneys Office that apparently he thinks. The United States Attorney's Office deals with the attorney chosen by the client, or the Court in the case of appointed counsel. Either way, prosecution decisions are made

6

based on many of the same factors the Court considers in sentencing decisions. Defendant Moncier seems to have such a personal agenda to be confrontational with anyone representing a governmental entity that this personal agenda seems to trump the needs of his clients and his duty to the profession. He seems to see the judicial system as a battle between himself and everyone else. This egocentric outlook serves no one and only feeds on itself.

Defendant Moncier seems to infer that he has been so successful as a defense attorney that the U.S. Attorney's Office and the law enforcement community in northeast Tennessee are out to get him. Again, this egocentric paranoia is not sustained by a reality check. The U.S. Attorney's Office in the Northeast Division has prosecuted over eight hundred defendants in the last five years. A cursory computer check for the last five years indicates defendant Moncier represented approximately six defendants in this time period. Of those defendants, defendant cites four in his memorandum. First, the percentage of work in this division involving defendant Moncier is minuscule. Second, defendant Vassar received 144 months and defendant Musick received 235 months. Other defendants represented by defendant Moncier not mentioned by Moncier are Michael Snipes (2:03-CR-70) who received life in prison and Billy Schrader (2:02-CR-48) who received probation and home detention. Perhaps the best response to the defendant's argument has already been made by this Court: "Well, with all due respect, Mr. Moncier, you are a legend in your own mind." (Case No. 2:05-CR-75, Doc. No. 683, 11/17/06 Transcript at 18).

Conclusion

The United States would agree that rehabilitation in this case should be of primary importance to the Court, however, the Court should also consider the characteristics of the defendant, the seriousness of the offense, and respect for the law, which in this case is the entire justice system. Because of the seriousness of the offense, a sentence of incarceration could be justified. However, the defendant and the entire justice system may be better served if the Court were to consider a probationary sentence that includes rehabilitative classes, such as training in professional ethics and conduct, counseling (including anger management), community service (which does not include notoriety, only helping others), and a fine as the Court deems appropriate.

Respectfully submitted,

JAMES R. DEDRICK
United States Attorney

By: *s/ Robert M. Reeves*
ROBERT M. REEVES    BPR: 011110
Assistant U.S. Attorney
220 West Depot Street, Ste. 423
Greeneville, TN  37743
423/639-6759 ext. 114

CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2007 a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other interested parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

By: *s/ Robert M. Reeves*
ROBERT M. REEVES
Assistant U.S. Attorney

8